**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.  10-cv-01807-WJM-KLM

DONANCIO DURAN,

     Plaintiff,

v.

LAFARGE NORTH AMERICA, INC.,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Donancio Duran ("Plaintiff" or "Duran") brings claims against his former employer, LaFarge North America ("Defendant" or "LaFarge"), for a hostile work environment, racial discrimination, retaliation, and wrongful discharge.  Before the Court is Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 37.)  For the reasons set forth below, the Motion is granted.

## I.  STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal

Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

The Court must resolve factual ambiguities against the moving party, thus favoring the

right to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522,

1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir.

1987).

## II.  FACTUAL BACKGROUND

The relevant facts, viewed in the light most favorable to the Plaintiff, are as

follows. LaFarge is a corporation that operates several business divisions, including an

asphalt and paving division.  (Lowder Decl. (ECF No. 37-2) ¶ 3.)  Plaintiff is an Hispanic

male who worked seasonally as a driver for LaFarge from July 2006 until July 2009.

(*Id*. ¶¶ 3-4; Pl.'s Dep. (ECF No. 45-1) at 14, 66.)

On June 3, 2009, a co-worker told Plaintiff that Alvin Rodamel, another driver for

Defendant, had called Plaintiff a "dirty Mexican."  (Pl.'s Dep. at 46.)  Plaintiff

immediately reported the Rodamel's use of the racial slur to his supervisor, Herman

Chavez.  (*Id*.)  The following day, Plaintiff contacted Rosario Weston, Defendant's

human resources specialist, and informed her of the incident.  (*Id*. at 48-49.)  Weston

said she would look into it.  (*Id*. at 65.)  No action was taken against Rodamel.  (*Id*. at

2

48.)  This incident was the only time that Plaintiff heard of anyone directing a racial slur towards him at work.  (*Id*. at 48, 67.)

In late June 2009, Defendant received the telephone bill for May 24, 2009 through June 23, 2009.  (Lowder Decl. ¶ 9.)  It showed that Plaintiff had used almost twice as many minutes as the next closest driver and multiples of the average driver usage.  (ECF No. 37-3 at 6-9.)  Plaintiff had previously been counseled three or four times for excessive cell phone usage.  (ECF No. 37-5 at 2; Pl.'s Dep. at 75.)  Management instructed Chavez to formally write up Plaintiff for excessive cell phone usage.  (Chavez Dep. at 35.)  Chavez prepared a written warning but Plaintiff was terminated before Chavez could give it to him.[1]  (Clementi Dep. at 41.)

Days later, Ted Lowder, the general manager at the location where Plaintiff was based, saw Plaintiff not wearing his safety helmet, vest or goggles (collectively personal protection equipment or "PPE") in an area where PPE was required.  (Lowder Decl. ¶ 10.)  Lowder discussed the safety violation with Weston and Chuck Clementi, the operations and logistics manager.  (*Id*. ¶ 12.)  Weston and Lowder then decided to terminate Plaintiff for excessive cell phone usage and violation of the PPE policy.  (*Id*.; Pl.'s Dep. at 17.)   Plaintiff was terminated on July 14, 2009.  (ECF No. 45 at 2.)

### III.  ANALYSIS

Plaintiff's Complaint brings four causes of action: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*. ("Title

---

[1]  The parties also discuss two other safety incidents in their briefing.  However, the facts surrounding these incidents are disputed and neither of these incidents was given as a basis for Plaintiff's termination.  Therefore, the Court has not considered either of these incidents in its analysis.

VII"); (2) retaliation in violation of Title VII; (3) hostile work environment based on his race in violation of Title VII; and (4) wrongful termination.  (ECF No. 1.)

The familiar *McDonnell-Douglas* burden-shifting test applies to each of Plaintiff's Title VII claims. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of employment discrimination, hostile work environment or retaliation.  *Id*.  If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, non-discriminatory basis for its employment decision.  *Id*.  If Defendant does so, the inference of discrimination drops out and the burden shifts back to Plaintiff and he must offer evidence to show that race was a determinative factor in the employment decision or that Defendant's non-discriminatory reason was merely pretext.  *Id.*

Defendant moves for summary judgment on all four claims.  The Court will address each in turn below.

## A.    Hostile Work Environment

Plaintiff alleges that he was subjected to a hostile work environment due to his race.  To meet his *prima facie* burden with respect to his hostile work environment claim, Plaintiff is required to show: (1) his workplace was "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [his] employment," and (2) that he "was subjected to this abusive environment because of his" race.  *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1170 (10th Cir. 2007).  In determining whether an actionable hostile work environment existed, the Court must consider "all the circumstances," *National Railroad Passenger Corp. v. Morgan*, 536

U.S. 101, 116 (2002), viewed through the perspective of a reasonable person in Plaintiff's position. *Montes*, 497 F.3d at 1170.

Defendant argues that Plaintiff has failed to point to sufficient facts showing that he was subjected to a sufficiently severe or pervasive work environment. (ECF No. 37-1 at 8-9.) In response, Plaintiff contends that he was called a "dirty Mexican" and that this single comment alone is sufficient to satisfy his burden. (ECF No. 45 at 8.)

Plaintiff's hostile work environment claim revolves around one co-worker's racial slur. In early June 2009, Monte Ordahl, one of Plaintiff's co-workers, informed Plaintiff that another co-worker, Alvin Rodamel, had referred to Plaintiff as a "dirty Mexican." (Pl.'s Dep. at 27, 30.) Plaintiff did not hear Rodamel use this term; he only learned of it through Ordahl. (*Id*. at 28.) Plaintiff is aware of only one time in which Rodamel used the phrase "dirty Mexican." (*Id*.) Plaintiff never heard Rodamel or any other co-worker using racially-charged language. (*Id*. at 48, 67.)

Plaintiff argues that the use of a single racial slur can constitute conduct that is so severe so as to constitute a hostile work environment. In general, isolated incidents are insufficient to show a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). However, frequency of the discriminatory comments or actions is only one factor to consider. *Bowen v. Missouri Dep't of Social Servs.*, 311 F.3d 878, 884 (8th Cir. 2002). A single incident that is "extremely serious" can be sufficient to show a severely racially-discriminatory work environment. *Faragher*, 524 U.S. at 788. *See also Lockhard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1067 (10th Cir. 1998) (single incident of sexual assault was so severe so as to constitute a hostile work

environment); *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) ("Of course, even a single episode of harassment, if severe enough, can establish a hostile work environment.").

Thus, the issue in this case is whether the one instance of Plaintiff being referred to as a "dirty Mexican" is sufficiently serious so as to satisfy his *prima facie* burden with respect to his hostile work environment claim.  The Court finds that it was not. Rodamel's derogatory comment was not made directly to Plaintiff nor was it made in his presence.  Rather, Plaintiff learned about the comment second-hand through his co-worker a few days later.  Courts have held that such second-hand harassment is less objectionable than harassment directed at the complainant personally.  *See Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005); *Chancellor v. Coca-Cola Enterprises, Inc.*, 2009 WL 4674058, *14 (S.D. Ohio Dec. 3, 2009) ("secondhand information and rumors do not carry the same weight as do comments directed at an individual or that an individual overhears.").

Plaintiff has failed to cite any case law holding that a single instance of a racial slur being used outside of the presence of the complaining party, without more, can constitute an actionable hostile work environment.  On these facts, the Court finds that no reasonable juror could conclude that Plaintiff's work environment was objectively hostile or abusive on the basis of his race.  *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996) (one isolated comment and the use of the term "girlie", "although regrettable, do not demonstrate that the work environment . . . was 'permeated with discriminatory intimidation, ridicule, and insult'"); *Chancellor*, 2009 WL

4674058 at *14 (one incident involving use of a racial slur that complainant did not personally overhear was not sufficient to show a hostile work environment). Accordingly, Plaintiff has failed to meet his *prima facie* burden and summary judgment in favor of Defendant on his hostile work environment claim is appropriate.

## B.    Race Discrimination

Plaintiff also brings a claim for race discrimination alleging that he was treated less favorably than non-minority employees.  To establish a prima facie case for racial discrimination, Plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.  *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007).

The first and second prongs of the *prima facie* standard are not in dispute in this case.  As an Hispanic employee, Plaintiff is a member of a protected class.  Plaintiff's termination undisputedly constitutes an adverse employment action.

Thus, the only issue is whether Plaintiff has shown that his termination occurred under circumstances giving rise to an inference of discrimination.  Plaintiff attempts to show an inference of discrimination by arguing that he was treated differently than similarly situated non-Hispanic  employees.  If he can show that similarly situated non-racial minority employees were treated in a more favorable manner, this gives rise to an inference of discrimination and satisfies Plaintiff's *prima facie* burden.  *English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1011 (10th Cir. 2001).

Defendant contends that Plaintiff was terminated for excessive use of his cellular

telephone and for violating its PPE policy.  (Lowder Decl. ¶ 12.)  Plaintiff alleges that

other employees also had safety violations and excessive cell phone use and were not

terminated.  (ECF No. 45 at 11.)  However, Plaintiff cites no evidence showing that

another employee had similar safety violations as those levied against him.  There is

testimony that other employees failed to always wear their eye protection or some other

piece of safety equipment.  (Pl.'s Dep. at 57; Chavez Dep. at 118-19.)  But there is no

evidence that another employee was seen without their eye protection, hard hat, and

vest in a required area.

With respect to his cell phone usage, despite Plaintiff's protestations to the

contrary, the evidence shows that Plaintiff had by far the highest cell phone usage of

any employee during the sixteen month period prior to his termination.  (ECF No. 45-5.)

Although Plaintiff did not have the highest cell phone use in three of those sixteen

months, all of the employees whose use exceeded his were also Hispanic.  (*Id.*)  Thus,

Plaintiff has failed to show that he was treated differently than any similarly situated

non-minority employee.

Because Plaintiff has failed to show that he was treated differently than any

similarly situated non-minority employee, and this is the only argument he raises with

respect to the third prong of his *prima facie* test,[2] the Court finds that Plaintiff has failed

to meet his *prima facie* burden as to this claim as well.  Thus, Defendant's Motion for

---

[2]  The Court notes that there are other means of showing that a termination occurred under circumstances that give rise to an inference of discrimination.  *See Hystem v. Burlington Northern v. Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (courts must be sensitive to "myriad" of ways in which an inference of discrimination can arise); *see also Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (listing methods of showing an inference of discrimination).  Plaintiff does not argue that any of these other methods applies here.

Summary Judgment is granted with respect to Plaintiff's race discrimination claim.

## C.    Retaliation

Plaintiff alleges that he was terminated as retaliation for having reported his co-worker's use of a racial slur.  To establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in a protected activity; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action."  *Argo v. Blue Cross Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

Defendant argues that Plaintiff cannot meet his *prima facie* burden because Plaintiff's report of Rodamel's racial slur did not constitute protected activity.  (ECF No. 37-1 at 16-17.)  To constitute protected activity, Plaintiff must have had a reasonable, good-faith belief that the conduct he reported to human resources violated Title VII. *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 385 (10th Cir. 1984).  Defendant argues that no reasonable person could believe that the use of a racial slur on one occasion violates Title VII.  Though, as discussed above, the Court has found that Rodamel's actions did not constitute a hostile work environment, the fact that there was no Title VII violation is not dispositive of whether Plaintiff's report of the use of the slur was protected activity for purposes of his retaliation claim.  *Jeffries v. Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998) ("a plaintiff may maintain an action for retaliation based on participation in a protected proceeding regardless of whether the conduct forming the basis of her underlying complaint is adjudged to violate Title VII") .  If Plaintiff had a good faith belief that a co-worker calling him a "dirty Mexican" violated the law, his

report of such activity was protected. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001). The Court finds that it is reasonable for an individual without legal training to believe that the use of a racial slur in the workplace, even if it was an isolated incident and made outside his presence, violates Title VII. Thus, Plaintiff's report to human resources was protected activity and he has satisfied the first prong of the *prima facie* standard.

Plaintiff's termination also satisfies the second prong of the *prima facie* test because a reasonable person would consider the loss of one's job to be materially adverse. With respect to the third prong, Defendant argues that Plaintiff cannot show any causal link between his termination and his protected activity. However, Plaintiff was terminated no more than six weeks after he reported the use of the racial slur to human resources. The temporal proximity of these two events alone is sufficient to show causation for purposes of Plaintiff's *prima facie* burden. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (one and one-half month period between protected activity and adverse action may, by itself, establish causation). Thus, the Court finds that Plaintiff has met his *prima facie* burden of showing that he was terminated in retaliation for reporting his co-worker's racial slur to Defendant.

The burden therefore shifts to Defendant to come forward with a legitimate, non-discriminatory basis for Plaintiff's termination. Defendant alleges that Plaintiff was terminated for excessive cell phone usage and violating Defendant's PPE policy. (Lowder Decl. ¶ 12.) The Court finds that these explanations are legitimate, non-discriminatory bases for Plaintiff's termination.

Accordingly, the burden shifts back to Plaintiff to show that the proffered bases are a pretext for retaliation. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). In order to establish a genuine issue of material fact as to pretext, a plaintiff must produce evidence that would allow a reasonable juror to find that the defendant's non-discriminatory reason is "unworthy of belief." *Id*. A plaintiff can meet this burden with "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (quotation omitted). In determining whether a plaintiff has shown pretext, the Court must consider the plaintiff's evidence in its totality. *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008).

In this case, Plaintiff argues that the bases proffered for his termination were pretextual because "Defendant could identify no other employees that had been terminated for excessive phone usage or personal protective equipment violations." (ECF No. 45 at 13.) Plaintiff also again points out that other drivers used more cell phone minutes than him three of the sixteen billing cycles that he was employed with Defendant. (*Id*.)

Plaintiff fails, however, to back up these allegations with any valid citations to the record. The paragraph in Plaintiff's brief devoted to the pretext inquiry with respect to his retaliation claim contains only one citation—"Plaintiff's Exhibit 5; 17:2-7"—which allegedly supports his contention that no other employees were terminated for

excessive phone usage or violating the PPE policy.  (ECF No. 45 at 13.)  The Court has reviewed Plaintiff's Exhibit 5, which is the deposition of Herman Chavez, and cannot find anywhere therein a discussion regarding whether other employees were terminated for excessive cell phone usage or violating the PPE policy.[3]

The Court has no obligation to sift through Plaintiff's evidence to find support for his arguments.  *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her].").  "[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record.'"  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004).  Plaintiff's filings in this case have failed to meet this burden and this failure, in and of itself, is sufficient reason to grant summary judgment in favor of Defendant.  *See Mitchell*, 218 F.3d at 1199 (holding summary judgment is appropriate when an opposition is "limited to conclusory statements and . . . void of cites to the specific portions" of the record containing relevant evidence).

Moreover, the phone records show that Plaintiff undisputedly had the highest cell phone usage of any driver.  (ECF No. 37-2, 37-3, 45-5 & 45-6.)  Though one driver used more minutes than Plaintiff in three out of sixteen months, Plaintiff had the highest

---

[3] On the assumption that Plaintiff's counsel may have intended to be referring to attachment number 5 to his brief as it is docketed in the Court's case management system, the Court also reviewed ECF No. 45-5.  However, ECF No. 45-5 is phone records, which do not support his argument that no other employees were terminated for excessive phone usage or PPE violations.

usage the other thirteen months.  (*Id.*)  During seven billing cycles, Plaintiff used over

3000 minutes.  Only one other driver ever exceeded 2000 minutes, and that was only

for one month.  The month before Plaintiff was terminated, his cell phone usage was

5930 minutes, nearly twice the usage of the next driver and multiples of the average

driver's usage.  (ECF No.  37-3 at 7.)  Thus, Plaintiff has failed to show a material

factual dispute as to whether Defendant's claim that he was terminated for excessive

cell phone usage was pretextual.

With respect to the PPE issue, Plaintiff admits that he violated the PPE policy.

(Pl.'s Dep. at 55.)  Plaintiff argues that other people also violated the PPE policy but

were not terminated.  (ECF No. 45 at 13.)  However, in the portion of his brief devoted

to his retaliation claim, Plaintiff once again fails to cite *any* evidence, let alone

competent evidence, in the record supporting this contention.[4]  The arguments of

counsel are of course not themselves evidence and thus cannot be the basis for the

non-moving party to withstand summary judgment.  *Adams v. Am. Guar. and Liability*

*Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (to survive summary judgment, non-

movant "must do more than refer to allegations of counsel contained in a brief . . .

Rather, sufficient evidence (pertinent to the material issue) must be identified by

---

[4]  The Court notes that, in other portions of his brief, Plaintiff cites two depositions for
the contention that other employees were not terminated after PPE violations.  (ECF No. 45 at
12.)  The Court has reviewed the evidence cited therein and finds that it does not refute the
Court's analysis of the retaliation claim.  Herman Chavez testified that he saw other PPE
violations but not of the sort levied against Plaintiff.  (Chavez Dep. at 118-19.)  Ted Lowder
testified that while he could not recall anyone having been fired for a single PPE violation, he
has heard of it happening.  (Lowder Dep. at 17.)  This evidence does not support Plaintiff's
contention that other employees engaged in the same behavior he did and were treated more
favorably.

reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."). Thus, Plaintiff has failed to provide any evidence that would allow a reasonable juror to conclude that Defendant's contention that Plaintiff was fired for violating the PPE policy was pretextual.

Plaintiff has failed to show any factual dispute as to whether Defendant's proffered bases for his termination were pretext for retaliation. As such, his retaliation claim cannot survive summary judgment. *Proctor v. United Parcel Service*, 502 F.3d 1200, 1211 (10th Cir. 2007) (affirming grant of summary judgment where plaintiff failed to show factual dispute as to pretext). Defendant's Motion for Summary Judgment is granted as to Plaintiff's retaliation claim.

**D.    Wrongful Discharge**

Plaintiff's final cause of action is that of "wrongful discharge." (Compl. at 8.) From the Court's review of the Complaint, it is difficult to discern how this claim is different from the Title VII claims discussed above. Plaintiff alleges that he was terminated in retaliation for his complaints about discrimination and because of his "protected classification", *i.e.*, his race. (*Id*.) Plaintiff's final claim is devoid of any factual allegations in support of a state law tort claim of wrongful discharge in violation of public policy, such as was recognized by the Colorado Supreme Court in *Martin Marietta Corp. V. Lorenz*, 823 P.2d 100, 107 (Colo. 1992). Thus, it appears to the Court that Plaintiff's fourth claim is nothing more than a re-casting of his prior three causes of action as a tort claim. Indeed, Plaintiff's only allegations supporting his wrongful discharge claim are related to his race and his report of his co-worker's racially-hostile

language.  (Compl. at 8-9; ECF No. 45 at 13-14.)  Since Plaintiff fails to allege any new facts or assert any different theory of liability as to this claim, the Court finds that it is sufficiently addressed by the above analysis regarding his first three claims.

Accordingly, the Court finds that Plaintiff has failed to show a trial-worthy issue as to his wrongful discharge claim.  Defendant's Motion for Summary Judgment is granted as to Plaintiff's wrongful discharge claim.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.  The Clerk shall enter judgment in favor of Defendant on all claims.  Costs shall be taxed against Plaintiff.

Dated this 9th day of January, 2012.

BY THE COURT:

William J. Martínez
United States District Judge